### ALLEN et al. v. SIMPSON.
### Civ. A. No. 3567.

United States District Court
M. D. Pennsylvania.
Feb. 12, 1951.

536

Louis Fine, Honesdale, Pa., for plaintiffs.

L. B. Maxwell, Honesdale, Pa., for defendant.

WATSON, Chief Judge.

This is an action by Merrill Allen and his wife, Alice Allen, Plaintiffs, to recover damages from Glenn Simpson, Defendant, for personal injuries sustained by Plaintiffs as a result of a motorcycle-truck accident alleged to have been caused by the negligence of the Defendant. The case was tried before the Court and a jury, and the jury returned a verdict in favor of the Plaintiffs. The jury awarded the sum of Twelve Thousand Dollars to Merrill Allen and the sum of Eight Thousand Dollars to Alice Allen.

The case is now before the Court on a motion by the Defendant for a new trial. Defendant's Motion is based on the grounds that the verdict was against the law, against the weight of the evidence, founded upon insufficient evidence and excessive. However, at the argument for a new trial, Defendant attacked the verdict only on the ground that it was excessive.

The facts are these. On June 14, 1949, Plaintiffs were travelling on a motorcycle in a northerly direction, and as they rounded a sharp curve, Defendant's truck, proceeding in the opposite direction, came straight across the highway over on to the left side of the road and struck the motorcycle behind the front wheel, crushing the legs of the Plaintiffs. Plaintiffs were thrown from the motorcycle on to the side of the road at a point approximately 12 feet from the point of impact. Plaintiffs were later transported by ambulance to the Binghamton City Hospital.

Dr. Leonard J. Flanagan of the Binghamton City Hospital clearly described the injuries suffered by Plaintiff, Alice Allen: "She had extensive compound wounds of the left tibia and fibula below the knee. Many pieces of bone were lying outside of the leg. The lower left leg from the midcalf downward had multiple puncture wounds and lacerations with no circulation in the foot."

An amputation of the lower left leg was performed on the same day. Dr. Flanagan testified: "The amputation because of the dirt and mutilation of the tissues, a more or less guillotine type of amputation was done. In other words a permanent stump was not established at that time due to the fact that grass and dirt and debris was mixed into the wound, and that was thoroughly cleaned out as much as possible but as always in such cases, infection was probable, therefore we didn't close it up."

The first amputation was about 6 or 8 inches below the knee, including the soft tissue. On September 23, 1949, the first amputation was revised to remove a lot of excess tissue which was bulbous at that time, so that it would fit an artificial limb.

While in the hospital Alice Allen received hypos, transfusions, penicillin and X-rays. She was discharged from the hospital on October 2, 1949. She used crutches until June 6, 1950, at which time she began to use an artificial limb. The artificial limb is 12 to 14 inches in length and is connected to the stump by a leather support extending over and above the knee. Plaintiff suffers pain in her leg, and cannot stay on her feet for any prolonged period because her leg swells inside the artificial limb.

Plaintiff, Alice Allen, is 23 years of age and had been employed as a waitress, and Dr. Flanagan testified that at the time he could not state whether she would ever be able to work as a waitress. Plaintiff, Alice Allen, showed a loss of earnings in the sum of $2553.00.

Merrill Allen suffered a badly compounded fracture of the left leg with open wounds of the left lower extremity. He was confined to the hospital for 72 days and was discharged on crutches with a

plaster cast on the left leg extending up most of the thigh. A large fragment at the lower end of the bone, the tibia, did not heal and it was necessary to have a bone graft before the area would be bridged across by normal solid bone. Such an operation was later performed in the State of Maine.

Plaintiff, Merrill Allen, wore long casts for a total of seven months, and later was required to wear short casts, and was still wearing a short cast at the time of the trial. Dr. Flanagan testified that the tissues of the left leg are shrunken somewhat, and that it would be about two more years before the leg would regain its former strength. The left leg is at least one-half inch shorter than the right, and his ankle motion is limited, having about 35 degrees motion. Dr. Flanagan further testified that the Plaintiff, Merrill Allen, will require observation and change of splint for the next year at least.

Plaintiff, Merrill Allen, is 28 years of age and was employed as a chef, earning between $60.00 and $75.00 a week plus room and board. He has been unable to resume his work as a chef as he cannot put any weight on his left foot. Plaintiff shows a loss of earnings in the sum of $4475.12.

In addition to his loss of time, pain and suffering, disability, and earnings, Plaintiff, Merrill Allen, has incurred liability for over $3900.00 in medical and hospital bills.

Courts have the power to set aside verdicts on the ground of excessiveness, yet it is a power to be cautiously used. The maximum amount which a jury might properly award as damages under the evidence in a personal injury case cannot be determined with any degree of certainty, and must be largely a matter of judgment for the jury. Malone v. Suburban Transit Co., D.C.E.D.S.C.1946, 64 F.Supp. 859. A court should not set aside a verdict on the ground that it is excessive unless it is so high as to shock the conscience of the court. In the absence of any showing that the jury was biased or prejudiced or acted capriciously or unreasonably, it will not interfere with the verdict.

It is the opinion of this Court that the verdict of the jury is not so excessive as to shock the conscience of the Court, nor can it be said to be the result of bias, prejudice or caprice. Defendant's motion for a new trial must be denied.

An appropriate order will be filed herewith.